FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 02, 2026

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BOBBIE A.,[1]<br><br>          Plaintiff,<br><br>  v.<br><br>FRANK BISIGNANO<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>          Defendant. | No.  2:25-CV-00383-RLP<br><br>ORDER AFFIRMING THE<br>COMMISSIONER'S DECISION |

BEFORE THE COURT is an appeal from an Administrative Law Judge (ALJ) final decision denying disability income benefits under Title XVI of the Social Security Act. ECF No. 10. The Court considered the matter without oral argument. For the reasons discussed below, the Court concludes the ALJ did not commit harmful legal error in evaluating medical opinion evidence or Ms. A.'s symptom testimony, or at step five of the evaluation. Therefore, Ms. A.'s brief, ECF No. 10, is denied and the Commissioner's brief, ECF No. 12, is granted.

---

[1] Plaintiff's first name and last initial are used to protect her privacy.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 1

BACKGROUND

The facts of the case are set forth in the administrative hearing and transcript, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and therefore require only a brief summary.

Ms. A. was born in 1980. Tr. 207. She has a 9th grade education and no past relevant work. Tr. 27, 243. Ms. A. injured her right hand at age 14 when a door slammed on her wrist, severing tendons and causing other injuries. Tr. 317, 323.

On July 7, 2021, Ms. A. filed an application for benefits under Title XVI of the Social Security Act, alleging an onset date of September 15, 1994. Tr. 207-213. She claimed that her right hand injury, PTSD, hand fusion, hand numbness/weakness, neuroma in right wrist, chronic pain, limited right hand range of motion, and carpal tunnel syndrome rendered her unable to perform any job. Tr. 242. The application was denied initially and upon reconsideration. Tr. 108-117, 119-126. Ms. A. thereafter filed a request for a hearing. Tr. 129. A telephonic hearing was held on October 16, 2024. Tr. 39-78. During the hearing, Ms. A. amended her disability onset date to the application date, May 17, 2021. Tr. 17, 19, 42.

On October 21, 2024, the ALJ issued an unfavorable decision. Tr. 14-33. The Appeals Council denied a request for review. Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 2

## STANDARD OF REVIEW

This Court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). If the evidence in the record "is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a) (citation omitted).

Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S.Ct. 1696 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 3

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, if the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's residual functional capacity (RFC), which is the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If not, the analysis proceeds to step five and the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Ms. A. has not engaged in substantial gainful activity since May 17, 2021, the application date. Tr. 19. At step two, the ALJ found Ms. A. has the following severe impairment: right hand injury. *Id*.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 5

At step three, the ALJ found Ms. A. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 21.

With respect to the RFC, the ALJ found Ms. A. has the RFC to perform light work with the following exceptions:

> she is precluded from crawling and climbing ladders, ropes, and scaffolds; she can frequently climb ramps and stairs; she cannot push or pull with the right upper extremity; she can occasionally handle, finger, and feel with the right upper extremity; she is precluded from use of the right upper extremity for forceful gripping (e.g., swinging a hammer or turning a lug wrench); she can have occasional exposure to extreme cold and vibration; and she can have no exposure to hazards (e.g., unprotected heights, moving mechanical parts).

Tr. 21-22.

At step four, the ALJ found Ms. A. has no past relevant work. Tr. 27. At step five, the ALJ found Ms. A. capable of performing jobs that exist in significant numbers in the national economy, specifically as a dealer accounts investigator, school bus monitor, and router. Tr. 27-29. Based on these adverse findings, the ALJ determined Ms. A. has not been under a disability, as defined in the Social Security Act, since May 17, 2021, the date the application was filed. Tr. 29.

ANALYSIS

Ms. A.'s assignments of error pertain to the ALJ's assessment of three medical opinions and her own symptom testimony. These appear to pertain to the ALJ's analysis of Ms. A.'s RFC. Ms. A. also challenges the ALJ's evaluation at the final step of the sequential analysis.

A.    Medical Opinions

Ms. A. contends the ALJ failed to properly evaluate the opinions of her consultative examiners, Dr. Mitchell and Ms. Cowell. ECF No. 10 at 7-14. The regulations provide that an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c, 416.920c. Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required, to explain how other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see* 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

*1. Benjamin Mitchell, DO*

On October 15, 2022, Dr. Mitchell completed a physical evaluation of Ms. A. and diagnosed a right wrist neuroma and carpal tunnel syndrome. Tr. 335-344. As a result of these impairments, Dr. Mitchell concluded that Ms. A. could lift at least 25 pounds occasionally and 20 pounds frequently, carry at least 15 pounds frequently and 20 pounds occasionally, could occasionally reach, handle, grasp, and frequently feel. Tr. 342. Dr. Mitchell also indicated that Ms. A. was limited to four hours sitting, two hours standing, and two hours walking. Tr. 342. The ALJ found this opinion was not persuasive. Tr. 25. The ALJ rejected Dr. Mitchell's

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 7

opinion related to Ms. A.'s sitting, standing, and walking limitations, as well as limitations in reaching, handling, feeling, and grasping with the left hand, as unsupported by Dr. Mitchell's own examination findings and inconsistent with evidence in the record. Tr. 25-26.

Dr. Mitchell evaluated Ms. A. again on June 10, 2023. Tr. 354-363. He concluded that Ms. A. had sitting, standing, and walking limitations, the same carrying limitations he found in 2022, an increased lifting capacity, and rare handling, feeling, and grasping with the right arm. Tr. 361. The ALJ found Dr. Mitchell's 2023 opinion to be partially persuasive. Tr. 23. The ALJ rejected Dr. Mitchell's finding that handling, feeling, and grasping were limited to "rarely[,]" as his meaning of "rarely" was unclear, not an option on the completed form, and not defined by the agency. Tr. 26, 361. The ALJ determined that to the extent this can be read as an indication that Ms. A. is limited to less than occasional use of the right arm for these tasks, the finding is unsupported by Dr. Mitchell's own evaluation and inconsistent with the treatment record. Tr. 26.

The ALJ determined that, read together, Dr. Mitchell's evaluations of Ms. A. are not consistent, as she demonstrated more limitation in the 2023 evaluation, but her lifting capacity increased. Tr. 26. The ALJ noted that her sitting capacity decreased, while her standing and walking ability increased, all with no real evidence of limitation in either evaluation. Tr. 26. The ALJ concluded that these facts prevent Dr. Mitchell's opinion from earning more persuasive value. Tr. 26.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 8

Ms. A. argues that the ALJ made little more than a boilerplate finding in rejecting Dr. Mitchell's disabling opinion restricting her to rarely handling, feeling, and grasping with the dominant right hand. ECF No. 10 at 9-11. She asserts that the ALJ failed to explain the alleged "modest limitations" found upon Dr. Mitchell's evaluation. *Id*. at 9-10. Rather, Ms. A. asserts that Dr. Mitchell found severe limitations in strength, sensation, and range of motion of the right hand, with multiple swollen and deformed joints of the hands/wrists. *Id*. She notes that these findings are consistent with findings of contractures of the dominant right hand, fingers flexing and extending in unison, and significant sensory deficits from another doctor's evaluation in April 2022. *Id*.; citing Tr. 324-325.

Ms. A. also contends that any "modest loss of functional strength is not relevant, as Ms. A. testified that the weight of items is not her limiting factor. ECF No. 10 at 10. Rather, she notes that she explained she is restricted by pain, fatigue, and loss of sensation. *Id*.; Tr. 48-57. Further, Ms. A. argues that the ALJ erred by failing to consider the steps Ms. A. must take to alleviate her symptoms, which are consistent with Dr. Mitchell's assessed limitations. *Id*. She asserts that a proper assessment of Dr. Mitchell's opinion shows that she is unable to meet the manipulative requirements of competitive employment. *Id*. at 11.

The Court disagrees that the ALJ discredited Dr. Mitchell's opinion for improper reasons. First, the ALJ determined Dr. Mitchell's assessed limitations in 2022 regarding sitting, standing, and walking, as well as limitations in reaching,

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 9

handling, feeling, and grasping with the left hand, were not well supported by his own examination. Tr. 25-26. This finding is legally sound, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may discount a doctor's opinion when it is inconsistent with or unsupported by the doctor's own clinical findings), and substantial evidence supports it, *see* Tr. 338-39 (Dr. Mitchell's 2022 report noted that gait was normal with "reciprocal gait pattern" and "There appear to be no balance problems[,]" muscle strength normal in legs, ankles, and hips, "Sensory examination was normal to pinprick and light touch throughout lower extremities[,]" able to squat and rise from that position with ease, able to rise from a sitting position without assistance and no difficulty getting up and down from exam table, able to walk on heels and toes, tandem walking was normal, could hop on one foot bilaterally); Tr. 341 (Dr. Mitchell's 2022 report showed normal range of motion in back, hips, knees, ankles, and great toes).

The ALJ determined that Dr. Mitchell's 2022 evaluation demonstrated no left-hand abnormalities, so limitations in reaching, handling, feeling, and grasping with the left hand have no evidentiary basis. Tr. 25-26; *see* Tr. 338 (Dr. Mitchell's 2022 report showed normal muscle strength in left wrist flexion, left wrist extension, finger abduction, and hand grip); Tr. 339 (noting "Joint swelling, erythema in bilateral hand IP joints[,]" but "Soft, tender 2 cm mass palpated in volar surface of right wrist"); Tr. 340 (normal range of motion in left shoulder, elbow, wrist, and hand).

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 10

Second, the ALJ discounted Dr. Mitchell's 2022 assessed limitations regarding sitting, standing, and walking, as well as limitations in reaching, handling, feeling, and grasping with the left hand, as inconsistent with the medical record. Tr. 25-26. This finding is also legally sound, *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may reasonably reject doctors' opinions when they are inconsistent with or contradicted by the medical evidence), and substantial evidence supports it, *see, e.g.*, Tr. 323, 325, 328 (April 23, 2022 consultative examination with Dr. Crisp: ambulating independently, able to get up and down from exam table without difficulty, tandem walking was performed without difficulty, walking on heels and toes both performed without difficulty, normal gait, assessed no limits on standing or walking); Tr. 254 (Function Report dated February 2, 2022: Ms. A. did not report any difficulty with squatting, standing, walking, sitting, or kneeling); Tr. 323-24, 326-27, 329 (April 23, 2022 consultative examination with Dr. Crisp indicates "having overuse issues of non-dominant L hand," but notes had carpal tunnel surgery on the L side; physical exam notes on extremities do not reference left hand except to indicate that Ms. A. uses her left hand to manipulate individual fingers on her right hand into extension; neuromuscular strength exam notes a 4/5 motor power in right functional grip, but otherwise 5/5 strength in extremities; sensory and muscle tone exam notes only discuss right upper extremity deficits; normal range of motion for both left and right shoulder, elbows, wrists, and hands; diagnosed carpal tunnel in

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 11

her left upper extremity and noted "Reduced sensation in L hand. Reduced dexterity, non-dominant hand."; can occasionally handle and finger with left hand,[2] and frequently feel with left hand); Tr. Tr. 358-59 (June 10, 2023 examination with Dr. Mitchell: left hand fist can be made, normal opposition of fingers in left hand, can pinch, grasp, and manipulate small and large objects without difficulty with left hand, but cannot make a fist or approximate pointing finger and thumb – does not specify which hand; normal range of motion normal in left wrist and hand).

In his 2023 opinion, Dr. Mitchell indicated Ms. A. was limited to three hours sitting (decreased from four hours sitting in his 2022 opinion), two and a half hours standing (increased from two hours in his 2022 opinion), and two and a half hours walking (increased from two hours in his 2022 opinion). Tr. 361; compared with Tr. 342. He also concluded Ms. A. could rarely handle, grasp, or feel with her right hand (as opposed to his 2022 opinion which found she could occasionally handle and grasp, and frequently feel). Tr. 361; compared with Tr. 342.

The ALJ noted that "rarely" was not an option on the completed form, is not defined by the agency, and therefore Dr. Mitchell's meaning as to "rarely" is unclear. Tr. 26. However, the ALJ determined that to the extent this can be read as

---

[2] In evaluating Dr. Crisp's opinion, the ALJ found that limitations in use of Ms. A.'s left hand are not consistent with Dr. Crisp's evaluation, which does not show objective abnormalities in use of the left hand. Tr. 25.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 12

an indication Ms. A. is limited to less than occasional use of the right arm for handling, feeling, and grasping, it is not supported by the modest limitations found at Dr. Mitchell's evaluation. Tr. 26. Again, this finding is legally sound, *see Tommasetti*, 533 F.3d at 1041; *see* Tr. 357 (Dr. Mitchell's 2023 report noted normal muscle strength in wrist flexion, wrist extension, finger abduction, and 3/5 muscle strength in right hand grip); Tr. 357 (inconsistent sensory examination on right hand); Tr. 358 (exam showed "Hand Can be fully extended[] on right, left pinky cannot fully extend[,] fist cannot be made on right hand completely, left hand fist can be made, fingers cannot be opposed on right hand, normal opposition in left hand, can pinch, grasp, and manipulate small and large objects without difficulty with left hand, but cannot make a fist or approximate pointing finger and thumb – does not specify which hand); Tr. 359 (range of motion normal in left wrist and hand; decreased range of motion in right wrist and hand).

The ALJ also determined that to the extent Dr. Mitchell's 2023 opinion found that Ms. A. is limited to less than occasional use of the right arm for handling, feeling, and grasping, it is inconsistent with treatment record findings showing only modest loss of functional strength and Ms. A.'s demonstrated ability to use her right hand to assist with daily functional activities. Tr. 29. Again, this finding is legally sound, *see Batson*, 359 F.3d at 1195; *see, e.g.*, Tr. 338-39, 342-43 (Dr. Mitchell's 2022 opinion indicated muscle strength was 4/5 in right upper extremity, except for hand grip which was 3/5; upper extremities showed altered

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 13

sensation in inconsistent pattern in distal right hand and arm; hand can be fully extended, fist cannot be made with right hand; concern for inconsistent effort at times causing inconsistency on range of motion and strength in right upper extremity); Tr. 323 (Aprill 2022 evaluation by Dr. Crisp noted Ms. A. "is able to groom and perform daily ablutions by herself without assistance. She is also capable of basic household chores such as laundry, cooking, sweeping and vacuuming; uses adaptive behaviors to accomplish tasks; cooking is difficult, limited dexterity/safety with cutting implements. The claimant is able to drive and go shopping for groceries and home essentials.")

The ALJ had an adequate basis for rejecting Dr. Mitchell's assessed sitting, standing, and walking limitations, as well as his 2022 limitations in reaching, handling, feeling, and grasping with the left hand, and his 2023 limitations in handling, feeling, and grasping with her right hand.

*2. Angela Cowell, PMHNP[3]*

Ms. Cowell completed a consultative psychiatric examination of Ms. A. on May 2, 2023. Tr. 347-53. Ms. Cowell diagnosed PTSD and major depressive disorder with anxious distress, moderate severe, and concluded that Ms. A. was unable to understand, remember, and carry out simple or complex instructions, sustain concentration at a reasonable pace, interact with others, or adapt to usual

---

[3] A PMHNP is a psychiatric mental health nurse practitioner.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 14

workplace stressors. Tr. 351-52. The ALJ found that Ms. Cowell's opinion was not persuasive. Tr. 26. In rejecting Ms. Cowell's opinion, the ALJ determined that the substantial limitations she found were not supported by her own examination findings, and were inconsistent with the entirety of the record. *Id*.

Ms. A. argues that the ALJ did not provide any valid reasons for rejecting Ms. Cowell's opinion and excluding her limitations from his RFC assessment. ECF No. 10 at 12-13. The Court disagrees. The ALJ properly discounted Ms. Cowell's opinion on the same grounds used to discount the sitting, standing, walking, and manipulative limitations opined by Dr. Mitchell. Tr. 26.

First, the ALJ determined Ms. Cowell's opinion was not strongly supported by her own examination. Tr. 26. As discussed above, this finding is legally sound. *See Tommasetti*, 533 F.3d at 1041. The ALJ referenced Ms. A.'s "multiple normal findings" on Ms. Cowell's examination, "including orientation, remote memory, immediate recall, digit span testing, digit span testing,[4] fund of knowledge, and following a three-step command[,]" and determined these findings indicate "the substantial limitations found by Cowell overstate her limitations, even when considering just Cowell's own findings." Tr. 26. Further, the ALJ specifically noted that despite Ms. Cowell's narrative conclusion, she determined Ms. A. had fair attention and concentration. *Id*.

---

[4] The ALJ repeated "digit span testing" in his opinion. Tr. 26.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 15

Second, the ALJ discounted Ms. Cowell's opinion as inconsistent with the entirety of the record. Tr. 26. As discussed above, this finding is also legally sound. *See Batson*, 359 F.3d at 1195. The ALJ found that a review of the entirety of the record shows Ms. A. has "generally normal findings in memory, concentration, interaction, and adaptation at treatment visits and at Dr. Henry's evaluation." Tr. 26, *see, e.g.*, (April 11, 2022: psychological diagnostic evaluation by Dr. Henry noted Ms. A. "describes limited mental health history prior to the emotional problems that she has been having since her children were taken from her custody[,]" she was highly distressed on and off throughout the interview, crying, talking in a rapid manner, content focused on the perceived injustice of her children being taken out of her custody; report of anxiety and depression symptoms in the context of significant psychosocial stressors is consistent with an adjustment disorder; "Under the current circumstances" she is focused on not having her children in her custody and endorsing persisting depression and anxiety symptoms which may limit her willingness and/or ability to seek, obtain, and maintain employment; she is also under a significant amount of stress related to pending legal matters; results from the MoCA indicated possible mild cognitive impairment; she exhibited the greatest difficulty with items that involve short-term auditory memory; she demonstrated ability to understand and follow simple multistep instructions; it is possible that symptoms of depression and/or anxiety contributed to observed difficulties on the mental status examination; it is not

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 16

known whether or not there are other contributing factors and/or other neurocognitive deficits not directly assessed during the current evaluation; she does not exhibit severe cognitive impairment that would be expected to prevent her from being capable of independently managing funds).

The ALJ had an adequate basis for rejecting Ms. Cowell's assessed mental health limitations.

B.    Symptom Testimony

Ms. A. contends that the ALJ improperly discounted her testimony showing that she was unable to work.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks and citation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d

995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

Here, the ALJ found there was objective medical evidence of underlying impairments which could reasonably be expected to produce Ms. A.'s alleged symptoms, but that Ms. A.'s statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the record. Tr. 22-23.

The ALJ offered several reasons to discount Ms. A.'s testimony, which the Court finds well supported. First, the ALJ discounted Ms. A.'s testimony about her

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 18

physical and mental health impairments as unsupported by the objective medical evidence. Tr. 23. The ALJ cited several medical reports in making his determination that a limitation to a light exertion level with restrictions on postural and manipulation activities would account for Ms. A.'s physical medically determinable impairments. Tr. 23; *see, e.g.,* Tr. 326 (April 2022: consultative examination showed normal hand, thumb, and finger range of motion in both hands and wrists, contrary to her allegations); Tr. 340 (October 2022: orthopedic examination showed near-normal range of motion in the right metacarpophalangeal joints, and otherwise normal hand and wrist range of motion); Tr. 359 (June 2023: consultative physical examination findings demonstrated normal range of motion in the left hand and wrist, with range of motion limitations in the right hand and wrist); Tr. 377 (March 2020: Ms. A.'s hand surgeon indicated she had very good range of motion in the right hand, although there would be permanent long-term deficits); Tr. 378 (March 2020: moderate loss of strength, but only slightly diminished full composite grip strength); Tr. 324 (April 2022: physical examination showed Ms. A. is able to complete functional tasks with the right hand, albeit with difficulty, such as writing and opening a medication bottle). The ALJ determined that, despite allegations to the contrary, the record does not show meaningful evidence of left wrist and hand weakness or fatigability during the relevant period. *See, e.g.,* Tr. 324 (April 2022: motor power 4/5 in right functional grip, otherwise 5/5 strength in extremities); Tr. 338 (October 2022: muscle strength

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 19

normal in left wrist flexion, left wrist extension, finger abduction, and hand grip); Tr. 357 (June 2023: muscle strength normal in left wrist flexion, left wrist extension, finger abduction, and hand grip).

The ALJ also referenced the discussion of the record previously outlined in his decision to find Ms. A.'s allegations of substantial mental impairment not supported by the objective record. Tr. 23. The ALJ determined that although there were some abnormalities at examination, the record does not show evidence of meaningful limitation during treatment examinations and objective findings at consultative examinations are relatively modest. *Id*.; *see, e.g.*, Tr. 254 (February 2022: function report does not indicate difficulties with memory, but does indicate problems with understanding and following instructions); Tr. 317 (April 2022: psychological examination showed scores consistent with mild cognitive impairment); Tr. 324 (April 2022: physical examination noted normal speech, memory, concentration); Tr. 337, 356 (October 2022 and June 2023: memory and concentration were normal); Tr. 350 (May 2023: fair concentration); Tr. 253-54 (February 2022: function report shows Ms. A. engages in social activities with others and reported she gets along with others); Tr. 316, 348, 350, 361 (April 2022, May 2023, June 2023: depressed mood); Tr. 337, 356 (October 2022 and June 2023: appropriate mood); Tr. 371 (February 2021: mood/affect appropriate for situation, normal); Tr. 378 (March 2020: normal mood); Tr. 254 (February 2022: function report Ms. A. endorsed difficulty with concentration, task completion, and

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 20

attention span); Tr. 317 (April 2022: psychological evaluation showed limited difficulty with sustained attention; completed serial seven testing without issue); *compared with* Tr. 351 (May 2023: difficulty with serial three testing); Tr. 255 (February 2022: on function report, Ms. A. reported difficulty dealing with stress but indicated she easily handled changes to routine); Tr. 350-51, 378 (insight and judgment are fair or normal).[5] The ALJ also noted that the record does not show significant evidence of social anxiety or self-isolation. Tr. 23.

Ms. A. argues that the ALJ did little more than engage in a general recitation of the medical evidence, but did not specify any inconsistencies. ECF No. 10 at 15. The Court disagrees with Ms. A.'s characterization of the ALJ's decision. The ALJ discussed Ms. A's specific symptom claims, then referenced examination reports

---

[5] The ALJ stated that at psychological examination, Ms. A. demonstrated scores consistent with mild cognitive impairment, but noted the record does not show other evidence of memory impairment, including at a psychiatric consultative examination. Tr. 20. However, at the May 2023 psychiatric consultative examination, Ms. Cowell determined that Ms. A. is not able to understand, remember, and carry out simple instructions, citing to errors on serial three subtraction, and delayed three item recall, and she is not able to understand, remember, and carry out complex instructions, citing errors on number repetition backwards and serial seven subtraction or abstraction. Tr. 350, 352.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 21

and assertions on her function report in finding that the objective evidence does not support the level of limitation alleged. Tr. 22-23.

Ms. A. also appears to contend that the ALJ discounted her symptom testimony solely because it is not substantiated by objective medical evidence. ECF No. 10 at 15. Again, the Court disagrees with Ms. A.'s characterization of the ALJ's decision. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. While minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). As discussed below, the ALJ explicitly relied on several other valid reasons to discount Ms. A.'s symptom testimony.

Second, the ALJ found that the course of treatment for Ms. A.'s impairments is nearly nonexistent during the relevant period. Tr. 23. He noted that since the application date in May 2021, Ms. A. has sought treatment exactly one time, for removal of a splinter in her toe. *Id.*, citing Tr. 364. The ALJ noted that the record does not show treatment for her hands or mental health treatment of any kind. Tr.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 22

23. He acknowledged that Ms. A.'s hand surgeon did not offer further surgical treatment for her right hand in March 2020, but the ALJ noted this does not mean no non-surgical treatments are available. Tr. 23; citing Tr. 377. The ALJ stated that there is no evidence of pain management treatment from a pain clinic, strength or range of motion treatment at physical therapy, or any other attempts to improve the symptoms she claims to be debilitating. Tr. 23-24. He also noted that there is no follow-up treatment of record on Ms. A.'s left hand after surgery, which was reportedly successful. Tr. 24. The ALJ found that Ms. A.'s allegations of difficulty using both hands and severe pain in both hands, in particular, are inconsistent with the lack of any indication she sought additional treatment for these symptoms during the relevant period. *Id*.

The Court finds the ALJ did not err by citing her lack of treatment as one of the reasons to discredit her symptom testimony. An ALJ may reasonably consider the course and effectiveness of treatment. Social Security Ruling 16-3p; *Tommasetti*, 533 F.3d at 1039 (an ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment" in discounting subjective symptom testimony). Ms. A. argues that the ALJ failed to adequately consider that her lack of treatment is due to financial limitations, as well as difficulty driving to appointments due to pain and her hand locking up. ECF No. 10 at 16; citing Tr. 59. She also contends that she should not be penalized for difficulty recognizing her need for mental health treatment. ECF No. 10 at 17. However, as to financial

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 23

limitations, the ALJ stated that Ms. A. indicated she has access to health insurance and is able to get the treatment she feels is needed. Tr. 24; *see* Tr. 62-63. Thus, the ALJ determined that the lack of treatment demonstrates that Ms. A. does not feel she needs treatment, which is suggestive that she is not as limited as alleged. Tr. 24.

The ALJ also recognized that Ms. A.'s alleged unavailability of transportation is a barrier to treatment, but upon further questioning she admitted her residence is within 5-7 miles of bus stops, and that she is able to drive short distances. Tr. 24. The ALJ stated that Google Maps shows this testimony was somewhat exaggerated, and Ms. A. is actually located 3.5 miles from a bus stop, and a 15-minute drive from downtown Spokane. *Id*. Thus, the ALJ adequately considered potential barriers to treatment, but did not find them significant enough to warrant her complete failure to engage in treatment. *Id*. The ALJ validly discounted Ms. A.'s testimony as inconsistent with her lack of treatment during the relevant period.

Third, the ALJ found Ms. A.'s daily activities are not consistent with her allegations. Tr. 24. The ALJ noted that despite Ms. A.'s allegations that she can use her hands only for minimal amounts of time, she is able to engage in activities that require intact hand functioning, such as shopping, cooking, cleaning, doing other chores, driving, bathing, and fishing. *Id*., citing Tr. 50-55, 59-60, 249-53. The ALJ noted that although she receives assistance in some of these activities, the

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 24

record shows she is able to use her hands well enough to participate in a significant way. Tr. 24. The ALJ noted that Ms. A. also engages in activities that require considerable use of her hands, such as childcare and pet care. *Id*.; citing Tr. 54, 59-60, 250.

An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Ms. A. contends that her ability to take part in daily activities and use her hands with frequent breaks and assistance does not show that her activity level is inconsistent with her disabling allegations. ECF No. 10 at 18. However, allegations of disabling pain may be discredited if a claimant is able to spend a substantial part of the day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Fair*, 885 F.2d at 603. Even if the claimant experiences some difficulty or pain, his or her daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

It is not the court's role to second guess an ALJ's reasonable interpretation of a claimant's testimony. *Rollins*, 261 F.3d at 857; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming an ALJ's decision discounting a claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping"). Here, the ALJ's

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 25

determination that Ms. A. engaged in daily activities inconsistent with disabling limitations is reasonably supported by substantial evidence.

Next, the ALJ discounted Ms. A.'s symptom testimony due to evidence of poor effort during her consultative examination with Dr. Mitchell in 2022. Tr. 24. The ALJ observed that Dr. Mitchell noted altered sensation in an inconsistent pattern in the right arm, as Ms. A. voiced sensation with touch, but said she was unable to feel it. *Id.*; citing Tr. 338. Similarly, the ALJ indicated that Dr. Mitchell's report shows she was inconsistent in that she could not oppose her fingers when asked to, but then was able to pinch a pretend piece of paper at a different time. Tr. 24; citing Tr. 342-43. Dr. Mitchell questioned whether effort was consistent during the examination. *Id.* Thus, it was Dr. Mitchell who questioned Ms. A.'s effort during the examination, and the ALJ reasonably considered his statements in evaluating the record.

An ALJ may consider evidence of poor effort by the claimant when evaluating her symptom testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Thomas*, 278 F.3d at 959. The ALJ found that, in addition to rendering the results of the specific examination suspect, the evidence of Ms. A.'s poor effort colors the entirety of the record. Tr. 24. He also noted that the unreliability of any piece of evidence is significant because Ms. A. had so little objective and observational treatment evidence. *Id.*

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 26

Finally, the ALJ found Ms. A.'s work history undermines her disability allegations. Tr. 24. An ALJ may use evidence of poor work history in assessing a claimant's credibility. *Thomas*, 278 F.3d at 959. The ALJ stated that Ms. A. has worked at substantial gainful activity levels in only one year in her lifetime, 2001. Tr. 24; citing Tr. 223-24. He noted that this was many years before the amended alleged onset and application date, but also many years after Ms. A.'s injury. Tr. 24. Therefore, the ALJ found that Ms. A. was able to engage in work activity at a significant level after the initial recovery from her childhood right hand injury, and before any evidence of additional impairments, such as her left carpal tunnel syndrome. *Id*. He stated the record does not show an intervening event of declining ability until her development of carpal tunnel syndrome. *Id*.

Additionally, the ALJ recognized that Ms. A. testified she was able to work at a modest level using her hands for cleaning. Tr. 24. While Ms. A. argues that her lack of work history is due to the fact that her right upper extremity limitations have existed since the age of 14, thus affecting her ability to work throughout her life, the ALJ determined the totality of this evidence leads to the conclusion that the impetus for her ongoing lack of employment is likely something other than her current medical impairments. ECF No. 10 at 18; Tr. 24. The Court finds the ALJ's reasoning with respect to Ms. A.'s work history also supports his conclusion.

The ALJ did not commit legal error in rejecting Ms. A.'s symptom testimony.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 27

## C.    Final Step

Ms. A. appears to argue that the ALJ erred by failing to resolve the vocational expert's deviation from the Dictionary of Occupational Titles (DOT). Specifically, Ms. A. asserts that the vocational expert's testimony was equivocal and appeared to contradict the DOT when presented with the ALJ's assessed restriction to never pushing/pulling with the right upper extremity and occasionally handling, fingering, and feeling with the right upper extremity.[6] ECF No. 10 at 19; citing Tr. 70-76.

The vocational expert testified that the DOT specifies two of the three identified jobs, investigator/dealer and school bus monitor, as occasionally handling, fingering, and feeling. Tr. 68. The vocational expert testified that for the third job of router, the DOT noted frequent reaching and handling, but explained "that job can be done with the occasional limitation" outlined in the ALJ's hypothetical. *Id*. The vocational expert confirmed that her testimony regarding anything not in the DOT, or different from the DOT, is based on her 40 years of experience as a vocational rehabilitation counselor, her training, and her experience. *Id*. She also testified that the DOT does not break down the use of one

---

[6] It is unclear what testimony Ms. A. is referring to concerning the restriction to never pushing/pulling with the right upper extremity. ECF No. 10 at 19.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 28

hand versus another, and that is also based on her experience, education, and training. *Id*.

Caselaw within the Ninth Circuit indicates that an ALJ may reasonably rely on a vocational expert's explanation that is based on the vocational expert's education, experience, or surveys when identifying jobs that can be performed. *See Dennis B. v. Saul*, 2020 WL 7264460 at *2 (C.D. Cal. Dec. 10, 2020) (finding "[a]n ALJ may rely on a VE's experience as a reasonable explanation for deviating from the DOT."); *BucknerLarkin v. Astrue*, 450 F. App'x 626, 628-629 (9th Cir. 2011) (finding that a conflict between the DOT and vocational expert was appropriately explained where the vocational expert offered testimony based on his own labor market surveys, experience, and research); *Morey v. Berryhill*, 2018 WL 1415160 at *3 (C.D. Cal. Mar. 20, 2018) (finding that the ALJ obtained a reasonable explanation for a conflict where the vocational expert "indicated that his testimony addressing the apparent conflict was based on his individual experience in placing individuals in similar jobs."); *Brian L. v. O'Malley*, 2024 WL 3223667 at *4-5 (C.D. Cal. Apr. 30, 2024) (finding the ALJ provided sufficient support to justify a deviation from the DOT by indicating the vocational expert's opinion was based on his education, training, and review of occupational requirement surveys). Accordingly, an ALJ may reasonably rely on a vocational expert's explanation for deviating from the DOT that is based on the vocational expert's education, experience, or surveys.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 29

The Court finds the ALJ obtained a reasonable explanation for the vocational expert's variance from the DOT and properly relied on her testimony to determine that jobs exist in significant numbers in the national economy that Ms. A. can perform.

Ms. A. next contends that her counsel did not have an opportunity to ask follow-up questions on cross-examination to determine whether the restriction on the right-hand dominant side would affect the ability to perform the full-time jobs identified by the vocational expert and adopted by the ALJ at step five. ECF No. 10 at 19; Tr. 27-29, 77-78. Ms. A. does not explain why counsel "did not have an opportunity" to ask these questions, as the hearing transcript shows that counsel engaged in extensive questioning of the vocational expert, Tr. 70-77, and when the ALJ directly asked her counsel if there was anything else, her counsel responded in the negative. Tr. 77.

Finally, Ms. A. asserts that the ALJ also erred because the vocational testimony relied on was without evidentiary value as it was provided in response to an incomplete hypothetical. ECF No. 10 at 20. This argument is foreclosed because, as discussed above, the ALJ properly evaluated the medical evidence and reasonably discounted Ms. A.'s testimony. This restatement of Ms. A.'s argument

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 30

fails to establish error at step five. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

The Court finds no error at step five.

CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1.  Ms. A.'s Brief, **ECF No. 10**, is **DENIED**.

2.  Defendant's Brief, **ECF No. 12**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** April 2, 2026.

REBECCA L. PENNELL
United States District Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 31